**MAYER BROWN LLP**
Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
Andrew Z. Edelstein (SBN 218023)
aedelstein@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

**MAYER BROWN LLP**
Carmine R. Zarlenga (*pro hac vice*)
czarlenga@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorneys for Defendant
CALIFORNIA PIZZA KITCHEN, INC.
and NESTLE USA, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE SIMPSON, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PIZZA KITCHEN, INC. and NESTLE USA, INC.,<br><br>Defendants. | Case No. 13CV0164 JLS JMA<br><br>Action Filed: January 21, 2013<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS**<br><br>[Fed. R. Civ P. 11]<br><br>Hearing Date: July 11, 2013<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom 4A<br><br>Trial Date: None set |

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION.................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................ 3

    A.  Weston's Prelitigation Settlement Demands And Filing Of The Frivolous Initial And Amended Complaints ..................................... 3

    B.  Weston's Improper Use Of Media, Website And  Discovery To Extort A Settlement .............................................................. 4

III.  ARGUMENT ....................................................................................... 8

    A.  Legal Standard ............................................................................ 8

    B.  Weston Filed A Frivolous Amended Complaint .............................. 10

        1.  The Entire Amended Complaint Is Preempted ...................... 10

        2.  The Public Nuisance Theory Is Frivolous .............................. 12

        3.  The UCL Claims Are Likewise Frivolous .............................. 16

        4.  The Breach of Implied Warranty Claim Is Frivolous ............. 17

    C.  A Large Sanction Is Appropriate ...................................................... 19

IV.  CONCLUSION .................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ADO Fin., AG v. McDonnell Douglas Corp.*,
938 F. Supp. 590 (C.D. Cal. 1996)..................................................................22

*Agbabiaka v. HSBC Bank USA Nat. Ass'n*,
2010 WL 1609974 (N.D. Cal. 2010) ..............................................................19

*Animal Legal Defense Fund v. U.S. Dep't. of Agric.*,
2013 WL 1191736 (C. D. Cal. Mar. 22, 2013) ................................................2

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ..........................................................................18

*Bryant v. Brooklyn Barbeque Corp.*,
932 F.2d 697 (8th Cir. 1991) ..........................................................................20

*Buster v. Greisen*,
104 F.3d 1186 (9th Cir. 1997) ...........................................................................9

*Carlton v. Jolly*,
125 F.R.D. 423 (D. Va. 1989) .........................................................................20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1990)..............................................................................16, 17

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002)...........................................................8, 9, 16, 19

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...........................................................................................9

*Espinosa v. Philip Morris USA, Inc.*,
500 F. Supp. 2d 979 (N.D. Ill. 2007) ..............................................................18

*Estate of Blue v. County of Los Angeles*,
120 F.3d 982 (9th Cir. 1997) .............................................................................9

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) .........................................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS
Case No. 13CV0164 JLS JMA

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
307 F.3d 501 (6th Cir. 2002) ...............................................................20, 10

*Gaskell v. Weir*,
10 F.3d 626 (9th Cir. 1993) ...............................................................................21

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ...........................................................................................11

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
801 F.2d 1531 (9th Cir. 1986) ...........................................................................20

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...............................................................18

*Hoyte v. Yum! Brands, Inc.*,
489 F. Supp. 2d 24 (D.D.C. 2007) .....................................................................18

*Hudson v. Moore Business Forms, Inc.*,
836 F.2d 1156 (9th Cir. 1987) .............................................................................9

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) .....................................................9

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) ...........................................................................12

*In re Grantham Bros.*,
922 F.2d 1438 (9th Cir. 1991) ...........................................................................10

*Insolia v. Philip Morris Inc.*,
128 F. Supp. 2d 1220 (W.D. Wis. 2000) ...........................................................11

*Institoris v. City of Los Angeles*,
210 Cal.App.3d 10 (1989) ..................................................................................12

*Johnson v. Mars, Inc.*,
2008 WL 2777063 (W.D. Wisc. July 14, 2008) ...............................................19

*Koll-Irvine Ctr. Prop. Owners Assn. v. Cnty. of Orange*,
24 Cal. App. 4th 1036 (1994) ...........................................................................13

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Kowalsky v. Hewlett-Packard Co.*,
  771 F. Supp. 2d 1156 (N.D. Cal. 2011) ........................................ 17

*Kraft Foods N. Am., Inc. v. Rockland County*,
  2003 WL 554796 (S.D.N.Y. Feb. 26, 2003) ................................. 11

*Kunimoto v. Fidell*,
  26 F. App'x 630 (9th Cir. 2001) .......................................... 21, 22

*Kunstler v. Britt*,
  914 F.2d 505 (4th Cir. 1990) ............................................... 20

*Lashley v. Pfizer, Inc.*,
  877 F. Supp. 2d 466 (S.D. Miss. 2012) ..................................... 18

*Margolis v. Ryan*,
  140 F.3d 850 (9th Cir. 1998) ............................................... 21

*McCann v. Lucky Money, Inc.*,
  129 Cal. App. 4th 1382 (2005) ............................................. 17

*Meaunrit v. ConAgra Foods Inc.*,
  2010 WL 2867393 (N.D. Cal. July 20, 2010) ............................... 11

*Meaunrit v. The Pinnacle Foods Group, LLC*,
  2010 WL 1838715 (N.D. Cal. May 5, 2010) ................................. 10

*Mendes v. Medtronic, Inc.*,
  No. 93-106650H, 1993 WL 625526 (D. Mass. Aug. 2, 1993) ................. 18

*Mexicali Rose v. Superior Court*,
  1 Cal. 4th 617 (Cal. 1992) ................................................ 18

*Morley v. Ciba-Geigy Corp.*,
  66 F.3d 21 (2d Cir. 1995) ................................................. 20

*Nat'l Broiler Council v. Voss*,
  44 F.3d 740 (9th Cir. 1994) ............................................... 11

*Paciulan v. George*,
  38 F.Supp.2d 1128 (N.D. Cal. 1999) ....................................... 19

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*,
  987 F.2d 594 (9th Cir. 1993)..................................................................22

*Refac Int'l, Ltd. v. Hitachi Ltd.*,
  141 F.R.D. 281 (C.D. Cal. 1991)........................................................21, 22

*Stewart v. Am. Int'l Oil & Gas Co.*,
  845 F.2d 196 (9th Cir. 1988) .................................................................9, 16

*Townsend v. Holman Consulting Corp.*,
  929 F.2d at 1362 (1990) ............................................................................19

*Truesdell v. S. California Permanente Med. Group*,
  209 F.R.D. 169 (C.D. Cal. 2002)........................................................20, 21

*Twombly v. Bell Atl. Corp.*,
  550 U.S. 544 (2007) ...................................................................................14

*Valle-Orgiz v. R.J. Reynolds Tobacco Co.*,
  385 F. Supp. 2d 126 (D.P.R. 2005) ...........................................................11

*Von Saher v. Norton Simon Museum of Art*,
  592 F.3d 954 (9th Cir. 2010) .....................................................................13

*White v. General Motors Corp., Inc.*,
  908 F.2d 675 (10th Cir. 1990)....................................................................20

*Whitehead v. Food Max of Miss., Inc.*,
  332 F.3d 796 (5th Cir. 2003) .....................................................................20

*Zaldivar v. City of Los Angeles*,
  780 F.2d 823(9th Cir. 1986)........................................................................10

**STATUTES**

21 U.S.C. § 301. ..............................................................................................14

21 U.S.C. § 343-1 ............................................................................................10

21 U.S.C. § 467e..............................................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS
Case No. 13CV0164 JLS JMA

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

21 U.S.C. § 601 ............................................................................................. 14

21 U.S.C. § 678 ............................................................................................. 11

CAL. CIV. CODE § 1791.1 ............................................................................... 18

Cal. Civ. Code §§ 3479-3493 ......................................................................... 12

Cal. Civ. Code § 3482 ........................................................................ 12, 14, 16

Cal. Civ. Code § 3493 ........................................................................ 12, 13, 14

Cal. Healthy & Safety Code § 11545 ............................................................. 17

**RULES**

California Rule of Professional Conduct 1-400 ............................................... 6

Fed. R. Civ. P. 11 .................................................................................... passim

Fed. R. Civ. P. 26(f) ..................................................................................... 7, 8

L.R. 15.1 ........................................................................................................... 4

L.R. 83.4(a)(2)(C) ............................................................................................ 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS
Case No. 13CV0164 JLS JMA

## I.    INTRODUCTION

On March 26, 2013, attorney Gregory Weston of The Weston Firm signed, and then filed in this Court, an amended complaint seeking to ban defendants from manufacturing and selling frozen pizza products – as well as seeking a refund of proceeds from all U.S. sales of the pizza products over the past four-plus years and a handsome attorneys' fee. (Dkt. #13.)[1] The purported basis for the lawsuit is ridding the U.S. food supply of partially hydrogenated vegetable oil ("PHVO"), a food additive that is entirely lawful, generally recognized as safe ("GRAS") by the U.S. Food and Drug Administration ("FDA"), and that is present in small amounts – in some cases amounts the FDA considers "nutritionally insignificant" or "nutritionally trivial" – in the challenged pizza products. Weston's theory of liability of challenging a lawful food additive is as objectively baseless as it is unprecedented.[2] The amended complaint is not only objectively baseless, but also was filed for an improper purpose. Accordingly, Weston violated his certification under Fed. R. Civ. P. 11, and the Court should sanction him and his firm, and, separately, order them to reimburse defendants' fees associated with this motion.

Weston's allegations do not establish that defendants violated any law.

---

[1] On January 21, 2013, Weston filed his initial complaint against California Pizza Kitchen, Inc. ("CPK") and Nestlé USA, Inc. ("Nestlé"), on behalf of a putative nationwide consumer class of purchasers of frozen pizza products (the "Challenged Pizzas"). On March 12, defendants moved to dismiss the complaint. (Dkt. #11.) And on March 14, 2013, defendants served a Rule 11 motion based on Weston's signing and filing the complaint. On March 26, 2013 – in lieu of opposing the motion to dismiss or the Rule 11 sanctions motion – Weston filed an amended complaint (the "amended complaint"). (Dkt. #13; see also Giali Decl., Ex. K.) On April 12, 2013, defendants filed a motion to dismiss the amended complaint. (Dkt. #20-1.)

[2] Weston cites to studies and media reports regarding the effects of consuming TFAs. See, e.g., Amended Complaint, nn.2 & 5. But, such reports are irrelevant to the issue of the legal viability of the amended complaint. Indeed, if Weston could base a complaint – and seek a ban and restitution – on reports about the unhealthful affects of a food additive, there would be no limit to such suits. (See, e.g., http://newsroom.heart.org/news/eating-too-much-salt-led-to-nearly-2-3-million-heart-related-deaths-worldwide-in-2010 (last visited April 8, 2013) (study reports 2.3 million deaths caused by salt).)

1

While Weston refers to a few examples of legislation of limited scope regulating the amount of trans fat, none of this legislation applies to the products at issue. Significantly, before Weston filed the initial complaint, Nestlé provided him with actual, written notice of the specific legal principles and authorities that negated his theory of liability. (*See* Giali Decl. Ex. C.) Weston filed the complaint anyway. In response, defendants again provided notice to Weston – in great detail via two motions – that his theories of liability were objectively baseless.[3] (*See* Dkt. #11-1; Giali Decl., Ex. J.) Rather than respond to defendants' motions, Weston filed the amended complaint. With limited exceptions, the amended complaint fails for all of the reasons specified in defendants' initial letter to Weston, defendants' initial Rule 11 motion, and defendants' initial motion to dismiss, as well as defendants' motion to dismiss the amended complaint.[4]

But this motion is grounded on far more egregious behavior than filing a baseless lawsuit. As the record set forth in this motion demonstrates, Weston filed the initial and now amended complaints for the improper purpose of using them as vehicles to generate adverse publicity to extort a monetary settlement. Before filing his complaint, Weston planned a media attack on defendants' valuable brands, including a "poison pizza" campaign on national and local television and on a website he created in advance for that express purpose, http://www.poisonpizza.com . Even more alarming, Weston tried, on at least three occasions, to extract a large settlement via communications with defendants' counsel, implying that a large monetary settlement would put an end to the media

---

[3] Indeed, as recently as last month, a court rejected a private attempt to ban food for allegedly scientific reasons. *See, e.g., Animal Legal Defense Fund v. U.S. Dep't. of Agric.*, 2013 WL 1191736, at *3 (C. D. Cal. Mar. 22, 2013) ("The Court leaves this [whether force-fed foie gras should be banned as an adulterated food product due to risks to human health] scientific conclusion for the USDA to decide based on its expertise in the field")).

[4] To avoid needless repetition, defendants incorporate by reference herein all the arguments and authorities set forth in their renewed motion to dismiss (Dkt. #20-1) and related filings.

attack.

Because the amended complaint is objectively baseless – as the most minimal legal research reveals and as demonstrated in defendants' prior correspondence, prior motions, and current motions – and was filed for an improper purpose, Weston has violated his certification under Fed. R. Civ. P. 11 and should be sanctioned. Weston has abused the legal system and is causing a drain on the resources of the judiciary, Nestlé and CPK. He then exploited his baseless filings to defame and harass Nestlé and CPK in the media, all and only for his own pecuniary gain. A Rule 11 sanction is more than appropriate. It is necessary.

## II.    FACTUAL BACKGROUND

### A.    Weston's Prelitigation Settlement Demands And Filing Of The Frivolous Initial And Amended Complaints

On December 5, 2012, Weston sent a prelitigation demand letter to Nestlé and CPK, enclosing a draft putative nationwide consumer class action complaint. (Giali Decl. ¶ 3, Ex. A.) In the letter and accompanying draft complaint, he asserted that defendants were manufacturing and marketing toxic products containing a poisonous ingredient – artificial trans fatty acids ("TFAs") – that were causing cancer. (*Id.*) Weston demanded that defendants remove the TFAs from their products and refund all U.S. purchases of the products over the last three years. (*Id.*) Otherwise, he would file the class action complaint. (*Id.*)

On January 7, 2013, The Weston Firm sent another letter to Nestlé's counsel, demanding several "terms," including an attorneys' fee of up to $675,000, in exchange for "a broad nationwide release from all claims relating to labeling and marketing of [defendants'] frozen pizza products." (Giali Decl. ¶ 5, Ex. B.)

On January 18, 2013, defendants responded to the two prelitigation demand letters, detailing, in ten single-spaced pages, numerous dispositive reasons why Weston's theory of liability was legally and factually baseless. (Giali Decl. ¶¶ 6-7,

3

Ex. C.)  The January 18, 2013 response provided detailed citations to unambiguous legal authority and attached two product labels to make clear that Weston's claims were, among other things, barred by federal law, which not only governs the Challenged Pizzas and preempts Weston's state-law claims, but also recognizes the legality of the challenged ingredient.  (*Id*.)  Nevertheless, on January 21, 2013, Weston filed his initial complaint.  (Dkt. #1.)  In response, defendants moved to dismiss the complaint (Dkt. #11-1) and served a Rule 11 motion for sanctions on Weston.  (Giali Decl., Ex. J.)

Unchastened, Weston filed the amended complaint, but the amended complaint seeks the same relief under the same objectively baseless legal theory as the initial complaint, and the few changes made are minor and cosmetic only.[5] (*See* Giali Decl., Ex. K (redline of complaint to amended complaint).)

### B.   Weston's Improper Use Of Media, Website And  Discovery To Extort A Settlement

Notably, Weston larded the initial and amended complaints with disparaging adjectives to describe ingredients in Nestlé's and CPK's  pizza, such as "poison," "toxic," "dangerous," "extremely harmful," "so inherently dangerous," and "carcinogen."  (Amended Complaint ¶¶ 3, 12, 15, 46, 92, 94 and pp. 4:8-9, 6:12-13.)  Going further, Weston alleges that Nestlé and CPK are "***deliberately poisoning***" consumers with frozen pizzas.  (*Id*. ¶ 15 (emphasis added).)  No facts are alleged to support the allegation.

***(1) Use of media.***  On January 30, 2013, with his newly-filed complaint in hand, Weston appeared on ABC's national broadcast of "Good Morning America" to promote himself and his lawsuit.  (*See* http://abcnews.go.com/US/nestle-facing-million-lawsuit-trans-fat-frozen-pizzas/story?id=18354382 ) (last visited April 11,

---

[5] The filing also is improperly named "Amended Complaint," in violation of the local rules.  *See* L.R. 15.1 ("Each amended pleading must be designated successively as first amended, second amended, etc.").

2013); *see also* Giali Decl. ¶¶ 9-10.)  On the broadcast, Weston employed the highly-charged terms he had placed in the complaint:  (i) "[Simpson] has two young children and she likes to make pizza for them, and, you know, all kids love pizza;" (ii) "It shouldn't have a ***toxic food additive*** that's been ***banned in many parts of the world***" (a demonstrably false statement),[6] and (iii) "We're seeking all of the money Nestlé's ever made selling frozen pizza."  (*Id*.)

That afternoon, counsel for defendants called Weston's law office and asked that Weston stop making irresponsible and false statements to the media, including specifically the false statements made on Good Morning America that defendants' pizzas contain a toxic additive and that TFAs are banned in many parts of the world.  (Giali Decl.¶ 11.)  Weston refused, indicating instead that he intended to increase his media use.  (*Id*. ¶ 13)  He did, however, make clear that the media use could stop if defendants would settle the lawsuit.  (*Id*.)

On February 5, 2013, with no monetary payment forthcoming, Weston appeared on the 11 p.m. news on San Diego's CBS affiliate, KFMB Channel 8 (*See* http://www.cbs8.com/category/155799/video-landing-page?clipId=8329875&autostart=true ) (last visited April 11, 2013); *see also* Giali Decl. ¶ 14, Ex. E.)  There, Weston continued the media attack, stating: (i) "It's just outrageous that they're still using [TFAs]"; (ii) "[TFA] just doesn't belong in food anymore"; and (iii) "These products shouldn't be sold at any price, so if this lawsuit raises the price of these dangerous products, then good."  (*Id*.)

***(2) Use of website.***  On December 4, 2012 – more than 6 weeks prior to filing this lawsuit – Weston registered the internet domain name

---

[6] In point of undisputed fact, TFAs are ***not*** banned ***anywhere*** in the world, but are merely regulated.  That point was made in defendants' initial motion to dismiss and initial Rule 11 motion in response to Weston's blanket allegations and media statements, causing Weston to modify the allegations in the amended complaint in that regard.  *See* Amended Complaint ¶¶ 3, 25.  Nevertheless, Weston still retains the highly charged and false "Banned" language in the amended complaint (*see, e.g., id.* 6:12-13), and his blanket "banned" statement made on Good Morning America is still accessible on the Internet and linked to his website.

"PoisonPizza.com."  (*See* http://www.poisonpizza.com ) (last visited April 11, 2013); *see also* Giali Decl. ¶¶ 15-19.)[7]  Defendants' counsel were unaware of the website, however, until February 6, 2013.  Defense counsel had noticed that the February 5, 2013 segment on KFMB Channel 8's 11 p.m. news closed with the newscaster inviting viewers to go to KFMB's website, CBS8.com, to obtain additional information about TFAs.  On February 6, defense counsel went to the referenced pages on KFMB's website and discovered a link to http://www.poisonpizza.com .  (*Id*.)

PoisonPizza.com initially solicited prospective clients to join the *Simpson* case in a manner violative of governing ethical rules.[8]  The website also disparages Nestlé, CPK and their products:

- "Nestlé saves pennies by using trans fat, and their customers get fatal coronary heart disease"
- "Nestlé's poison pizza"
- "Nestlé puts poisonous trans fat in its frozen pizzas"
- "Nestlé continues to put profits over the health of their customers"

---

[7] The day after he registered the website, Weston sent his first prelitigation settlement demand letter and draft complaint to defendants.  (Giali Decl. ¶ 3, Ex. A.)

[8] As pointed out by defendants in their initial Rule 11 motion (Giali Decl. Ex. J, n.5), Weston's website violates legal advertising standards governing members of the State Bar of California.  California Rule of Professional Conduct 1-400 includes sixteen enumerated "Standards," failure to comply with which is a presumptive violation of legal ethics.  The fifth standard requires that any communication seeking clients bear the word "Advertisement," "Newsletter," or similar language.  Weston's website (http://www.poisonpizza.com ) sought clients by requesting that "purchasers of Nestlé's poison pizzas should sign up HERE to consider joining the case." (Giali Decl. ¶ 16., Ex. F.)  The words "Advertisement," "Newsletter," or similar were not present.  (*Id*.)  In addition, the twelfth standard requires that communications "primarily directed to seeking [clients] transmitted to the general public . . . state the name of the member responsible for the communication."  (*Id*.)  PoisonPizza.com did not display Weston's name or the name of his law firm, and appears to have been designed specifically to hide Weston's identify.  (Giali Decl. ¶¶ 1-18.)  Only after service of the initial Rule 11 motion did Weston modify his website to omit the solicitation of new clients and to identify the website as being maintained by his firm.  He never, however, corrected the omission of any notice that the website is an advertisement.

- "Avoid harming yourself and your family with Nestlé's poison pizzas"
- "The following Nestlé varieties of frozen pizza all contain poisonous artificial trans fat . . ."
- "Help us stop Nestlé from adding toxic trans fats to its products"
- It also makes the false statements about various cities and countries "banning" trans fat

(Giali Decl. ¶ Ex. F.)  Weston's website also is visually denigrating of defendants' products and trademarks, as reflected on the following screenshot:



(*Id*.).  The website also has links to the false and disparaging segments from Good Morning America and the San Diego CBS affiliate referred to above.[9]

    *(3) Threat of discovery.*  In addition to the media and website barrage, Weston's settlement extraction playbook calls for the *in terrorem* threat of nationwide consumer class action discovery.[10]  On February 11, 2013, The Weston

---

[9] http://www.poisonpizza.com is just the latest example of Weston's reckless asymmetrical tactics to shake down corporate America.  (*See, e.g.,* http://smuckerlawsuit.com/ (disparaging Smucker's Uncrustables and Crisco).)  In addition to Weston's putative consumer class action, his Smucker website (http://smuckerlawsuit.com/ ) has spawned two additional lawsuits with Weston himself as a party.  (Giali Decl. at Exs. H and I.)

[10] Weston's use of discovery as settlement leverage began well before he even filed the complaint.  In his December 5, 2012 prelitigation settlement demand (Giali Decl., Ex. A.), he "remind[ed]" defendants of their "legal duty" to preserve "all e-mails, letters, reports, internal corporate instant messages, and laboratory records" relating to the Challenged Pizzas, and instructed defendants to "inform any employees, contractors, and third-party agents . . . to preserve all such relevant information."

Firm asked defendants to immediately conduct the Fed. R. Civ. P. 26(f) meeting of counsel.[11] (Giali Decl. ¶ 20, Ex. G.) Defendants pointed out that there was no initial Case Management Conference scheduled in the action, that defendants intended to move to dismiss the complaint, and that there was no basis to commence disclosures or discovery on this record (as many courts have ruled in other consumer class actions under like circumstances). (*Id.*) When Weston did not get immediate assent to engage in far-flung discovery, he filed an *ex parte* application to have the Court specially order the parties to engage immediately in a Rule 26(f) early meeting of counsel. The application was improper and summarily stricken by the Court as "[f]ailing to comply with Judge Adler's Chamber Rules re: case management and discovery disputes." (Dkt. #9.) Still undeterred, Weston proceeded with a joint motion to compel a Rule 26(f) conference. (*See* Dkt. #18.) Likewise, the Court denied Weston's motion on April 9, 2013. (*See* Dkt. #19.)

## III. <u>ARGUMENT</u>

### A. <u>Legal Standard</u>

The rules governing an attorney's use of the awesome powers of the federal judicial system against others are both serious and straightforward. "Filing a complaint in federal court is no trifling undertaking." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Federal Rule of Civil Procedure 11 provides, in relevant part:

---

[11] Weston knows well the significance to his plan of conducting the Rule 26(f) – it is the gateway to initial disclosures and the commencement of discovery. Fed. R. Civ. P. 26(a)(1)(C) & 26(d). Weston also knows well that conducting the Rule 26(f) *without* an initial Case Management Conference on calendar (as is the procedural posture of this action) makes illusory defendants' right to avail themselves of the provisions of Fed. R. Civ. P. 26(f)(3), which allow parties to present a discovery plan to the Court – at the Case Management Conference and *before* any disclosures or discovery is due – for the express purpose of modifying the timing of or limiting disclosures and discovery. Exploiting these rules to his strategic benefit, Weston sought to rush into a 26(f) conference and then unleash class action discovery on defendants, all without a Case Management Conference or an efficient manner for defendants to bring important case management and discovery issues before the Court in an orderly manner and all while defendants were challenging the legal viability of the complaint and amended complaint.

By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).[12]

Rule 11's "central purpose" is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Where the Rule 11 violation is premised on the filing of a complaint, the Court must consider: (1) whether the claim is objectively baseless, and (2) whether the attorney has conducted "a reasonable and competent inquiry." *Christian*, 286 F.3d at 1127 (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

"A claim is legally baseless if it is legally unreasonable, while a claim is factually baseless if it lacks factual foundation." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 2007 WL 6137003, *3 (C.D. Cal. Apr. 16, 2007) (citing *Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 985 (9th Cir. 1997)).

A pleading is frivolous if it fails to "state[] an arguable claim" and its claims are "legally unreasonable, or without legal foundation." *Stewart v. Am. Int'l Oil &*

---

[12] In addition, the Code of Conduct of the Southern District of California provides counsel shall not "[k]nowingly participate in litigation or any other proceeding that is without merit or is designed to harass or drain the financial resources of the opposing party." Local Rule 83.4(a)(2)(C).

*Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988) (citing *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987)); *In re Grantham Bros.*, 922 F.2d 1438, 1442 (9th Cir. 1991) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831(9th Cir. 1986)). The amended complaint transgresses the relevant standards.

### B. Weston Filed A Frivolous Amended Complaint

#### 1. The Entire Amended Complaint Is Preempted

As a fundamental threshold matter, and as defendants' counsel clearly explained to Weston in response to his prelitigation demand letter, in earlier, separate litigation Weston filed against Nestlé (*see* Giali Decl., ¶¶ 2, 6, Ex. C), in defendants' initial motion to dismiss (Dkt. #11-1 at 6-16), and in defendants' initial Rule 11 motion (Giali Dec., Ex. J), all of the claims he asserts are barred under well-settled preemption doctrines. The FDCA has a strong preemption provision specifying that "no State . . . may directly or indirectly establish under any authority . . . any requirement for the labeling of food of the type" regulated by federal law "that is not identical to the requirement[s] of" certain provisions of the FDCA and its implementing regulations. 21 U.S.C. §343-1(a). There can be no doubt that the FDA has established requirements of the type under assault from the complaint. (*See* Dkt. #11-1 at 9-12.) Simpson's theory of liability is therefore expressly preempted by Section 343-1. (*See also* Dkt. #20-1 at 9-11.)

Likewise, the express preemption provisions of the Federal Meat Inspection Act ("FMIA") and Poultry Products Inspection Act ("PPIA") bar Weston's state-law claims in two separate ways. *First*, regulations promulgated under those Acts establish a premarket-clearance process for obtaining the USDA's approval of products and packaging. Where, as here, the USDA has pre-cleared a particular product, the Acts bar a state from deeming the product unlawful on any basis covered in the premarket-clearance; the USDA having already "reviewed the labels . . . and approved of them," its determination is definitive and cannot be displaced by operation of state law. *Meaunrit v. The Pinnacle Foods Group, LLC*, 2010 WL

10

1  1838715, at *7 (N.D. Cal. May 5, 2010).  (Dkt. #11-1 at 12-13; *see also* Dkt. #20-1

2  at 11-13.)  *See infra* n. 18.

3      The FMIA and PPIA expressly preempt any state-law "[m]arking, labeling,

4  packaging, or ***ingredient*** requirements . . . in addition to, or different than, those

5  made under" the Meat and Poultry Acts.  21 U.S.C. § 678 (Meat Act) (emphasis

6  added); 21 U.S.C. § 467e (Poultry Act); *see also, e.g.*, *Nat'l Broiler Council v.*

7  *Voss*, 44 F.3d 740, 743-47 (9th Cir. 1994); *Kraft Foods N. Am., Inc. v. Rockland*

8  *County*, 2003 WL 554796, at *6-7 (S.D.N.Y. Feb. 26, 2003).  As with the FDCA,

9  "a state requirement is in addition to or different from federal requirements if it is

10  not 'equivalent' or 'parallel.'"  *See Meaunrit v. ConAgra Foods Inc.*, 2010 WL

11  2867393, at *5 (N.D. Cal. July 20, 2010).  (Dkt. #11-1 at 12-13; *see also* Dkt. #20-

12  1 at 11-13.)

13      In addition to these express-preemption provisions, federal law preempts

14  Simpson's suit on the separate and independent basis that state law may not be

15  used to ban a product when, as here, an expert federal regulatory agency has

16  specifically approved the use of the product and has regulated its use.   Otherwise,

17  the threat of civil liability would erect an obstacle to the accomplishment of the

18  comprehensive and carefully calibrated federal regulatory program.[13]  (Dkt. #11-1

19  at 14-16; *see also* Dkt. #20-1 at 13-15.)

---

[13] *See, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000) (federal law that required a percentage of new cars to employ passive-restraint systems preempted state tort claims that would have the effect of requiring auto manufacturers to install air bags in all new cars); *Valle-Orgiz v. R.J. Reynolds Tobacco Co.*, 385 F. Supp. 2d 126, 133 (D.P.R. 2005) (tort suits that would impose liability for manufacturing and selling cigarettes preempted because Congress chose to regulate rather than ban cigarettes) (relying on *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137, 144, 148 (2000) ("Congress stopped well short of ordering a ban," and instead "created a distinct regulatory scheme" for "labeling and advertisement of tobacco products," in order to implement a federal "policy . . . to protect commerce and the national economy . . . to the maximum extent consistent with consumers being adequately informed about any adverse health effects." (internal quotations marks and brackets omitted)); *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220, 1223-34 (W.D. Wis. 2000) (allowing tort suits that might have the effect of ending sale of cigarettes "would run afoul of the congressional policy that the sale of cigarettes is legal").

11

Not only would an independent cursory review of the regulatory scheme governing TFAs have revealed that the claims are preempted, but Weston was provided (several times) the entire argument, with detailed citations to the law, that established that his entire theory of liability was preempted. (Giali Decl. ¶¶ 2, 6 & Exs. C, J; Dkt. #11-1.) Needless to say, the reasonable inquiry required under Rule 11 would have revealed that the complaint was objectively baseless when filed.

## 2. The Public Nuisance Theory Is Frivolous

The preemption argument outlined above and detailed in defendants' renewed motion to dismiss applies equally to all of Weston's claims. There are additional, independent arguments that render his public nuisance claim frivolous.

Weston cites two statutes in the amended complaint that conclusively and separately bar Simpson's statutory public nuisance claim. (*See* Amended Complaint ¶ 90-96 (citing Cal. Civ. Code §§3479-3493).) The first statute, titled "Private Suit," provides in full: "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code §3493. The second statute, titled "Acts Authorized By Law," provides in full: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code §3482. Both of these statutes independently bar Simpson's nuisance claim. (Dkt. #11-1 at 18-19; *see also* Dkt. #20-1 at 18-19.)

Demonstrating that one has been "specially injured" under Section 3493 requires that the person have suffered an injury different in kind not simply in degree than the general public. *See, e.g., Ileto v. Glock Inc.*, 349 F.3d 1191, 1211 (9th Cir. 2003) (quoting *Institoris v. City of Los Angeles*, 210 Cal.App.3d 10 (1989)). For example, in *Ileto*, unlike here, plaintiffs were able to show special injury against gun manufacturers who flooded the market because plaintiffs were shot by an unlawful gun owner. *Id.*

Significantly, Weston does not plead that the alleged nuisance (*i.e.*, frozen

pizza with TFAs) is "specially injurious" to plaintiff Simpson. In fact, he pleads exactly the opposite in contradictory allegations not conceivably thought through, despite having advance notice of these deficiencies (Dkt. #11-1 at 18; Giali Decl., Ex. J at 11-14). Remarkably, Weston alleges affirmatively that Simpson is "similarly situated" to the putative class of frozen pizza buyers and that her claims are "typical" of the putative class. (Amended Complaint ¶¶ 74, 77.) Indeed, Weston claims that "[b]y purchasing and/or using the Nestle Trans Fat Pizzas, all Class members were subjected to the same wrongful conduct" as Simpson. (*Id.* ¶ 76.) Section 3493 obviously bars the nuisance claim, as even a cursory inquiry should have revealed.

To be sure, one of the amendments made by Weston following defendants' filing of their initial motion to dismiss and serving their initial Rule 11 motion is paragraph 70. That paragraph purports to allege an actual, special physical injury suffered by Simpson, but it is legally insufficient for three separate reasons. First, the only relevant part – that Simpson herself suffered actual, special physical injury – is nothing more than a legal conclusion that is entirely unadorned by factual allegations. (*See also* Amended Complaint ¶ 95 (no factual allegations supporting legal conclusion of injury to Simpson or her children).)[14] Accordingly, it is entitled to no weight at the pleading stage. *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010). Second, reading the entire allegation reveals that Simpson does not allege a specific, personal injury at all – the allegation is nothing more than stating a "relationship," not an injury, *i.e.*, that Simpson has been injured ***solely because*** consuming TFAs is associated with health issues. And that allegation is nothing more than Weston's general theory of

---

[14] Weston's conclusory reference to "emotional harm" (*id.*) also does not constitute special injury. *See, e.g.*, *Koll-Irvine Ctr. Prop. Owners Assn. v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1040 (1994) (fear of living near fuel storage tanks not special injury because, "to the extent it reasonably exists, [it] must be common also to the general community of which they are a part and differs between individuals within that community, if at all, in degree rather than in kind").

liability that the Challenged Pizzas are poisonous.[15]  Third, the requirement of section 3493 is that Simpson be "specially" injured, but paragraph 70 of the amended complaint makes clear that the alleged injury to Simpson is identical to that allegedly suffered by the putative class, *i.e.*, that consuming TFAs may cause health issues.

Nor can Simpson overcome the equally obvious and fatal application of Section 3482 ("Acts Authorized By Law").  The use of TFAs is expressly lawful and regulated by the USDA and FDA.  For products containing meat or poultry, Congress and the USDA have established uniform national requirements for food safety.  *See, e.g.,* 21 U.S.C. §§ 601, et seq.  Likewise, Congress and the FDA have established a detailed, rigorous system that comprehensively regulates the safety of food not containing meat or poultry.  21 U.S.C. §§ 301, et seq.  (Dkt. #11-1 at 6-12; *see also* Dkt. #20-1 at 6-11.)

Under both regimes, TFAs are recognized as lawful ingredients in food products.  First, TFAs lawfully may be included in food products in the United States because they enjoy GRAS status.  (Dkt. #11-1 at 6-8; *see also* Dkt. #20-1 at 6-8 (explaining GRAS status and its significance).)  Consequently, the FDA expressly permits the use of TFAs.  The FDA requires that product labels disclose separately on the Nutrition Facts panel the presence and amount of trans fat.  (Dkt. #11-1 at 7-9; *see also* Dkt. #20-1 at 7-9.)  Nestlé and CPK comply with these laws and Weston does not allege otherwise.  Indeed, his own website literally highlights defendants' conspicuous disclosure of trans fat, as reflected on the below screenshot from http://www.poisonpizza.com :

---

[15] Weston's naked assertion of "inflammation and damage to vital organs" (*see* Amended Complaint at ¶70), does not come close to satisfying "a plaintiff's obligation to provide the grounds of his entitlement to relief," which requires more than labels and conclusions."  *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007).  Here there are no allegations of how Simpson knows she has suffered inflammation or damage, or to which vital organs, or the effect thereof, if any.

(Giali Decl. Ex. F (highlighting in original).)[16]

The USDA likewise expressly permits the use of TFAs and regulates the labeling of meat and poultry products containing them. (Dkt. #11-1 at 9; *see also* Dkt. #20-1 at 8-9.) More importantly, the USDA has established a premarket-clearance process for food products, packaging and labels, including products containing TFAs. (*Id.*).[17] As is readily apparent on the face of the labels of the sixteen Challenged Pizzas under USDA jurisdiction, the USDA has cleared the

---

[16] This clear declaration of the content of TFAs in defendants' products corroborates the baseless nature of Weston's suit in an additional way. Weston purports to represent a class of consumers who made purchases after January 28, 2009 (Amended Complaint ¶ 74), but he also pleads that long before 2009 there was a "well-established scientific consensus that trans fat is extremely harmful" (*id.* ¶ 4:8-9; *id.* at 3, n.2 (citing 1999 New Eng. J. Med. article); *id* at 4, n.5 (citing 2003 Newsweek article)). Thus, at the time of purchase, the putative class had (at least) constructive notice of the alleged effect of consuming TFAs and actual notice of the TFA content of defendants' products through defendants' conspicuous labels.

[17] *See also* http://tinyurl.com/fdatfanfp ("Companies that wish to include a trans fat declaration will need to submit at least one label sketch that includes the trans fatty acid declaration in the Nutrition Facts panel to the Labeling and Consumer Protection Staff (LCPS) . . . [and] any labeling that includes a statement regarding trans fatty acids that is outside of and in addition to the Nutrition Facts panel declaration would need to be submitted to LCPS for evaluation").

labels and products, including the ingredient list and Nutrition Facts panel.[18] (*See also* Giali Decl. ¶ 7, Ex. C (last two pages).) Thus, and as any reasonable inquiry would reveal, Nestlé's and CPK's inclusion of TFAs is "done or maintained under the express authority of a statute" and therefore cannot "be deemed a nuisance." Cal. Civ. Code §3482. What is more, Weston received specific, separate and multiple notices of this exact point prior to filing the initial complaint and amended complaint. (Giali Decl. ¶¶ 2, 6, Ex. C, J; Dkt. #11-1.)

Accordingly, Weston's nuisance claim is barred by blackletter statutory law and is frivolous. *Christian*, 286 F.3d at 1127 (finding complaint frivolous when barred by settled law); *see also Stewart,* 845 F.2d at 201 (affirming an award of fees on the sole basis that the applicable law could not support the allegations). In *Stewart,* like here*,* sanctions were appropriate because "even a cursory review of the applicable law" would have revealed the claim's lack of merit. *Id*.

### 3. The UCL Claims Are Likewise Frivolous

With the failure of Weston's predicate nuisance claim (on both preemption and statutory grounds), the UCL claim fails, under both the "unfair" and "unlawful" prongs. To state a claim under the "unlawful" prong of the UCL, Simpson must state a claim for a violation of a law. *Cel-Tech Commc'ns, Inc. v.*

---

[18] The following 16 products were pre-cleared by the agency and bear the USDA approval on the front panel of the package: DiGiorno Traditional Crust (Small Pizza) Pepperoni ((03/12/13 Request for Judicial Notice In Support of Motion to Dismiss (Dkt. #11-2) ("RJN"), Ex. 2); DiGiorno Traditional Crust (Small Pizza) Three Meat (RJN, Ex. 3); DiGiorno Traditional Crust (Small Pizza) Supreme (RJN, Ex. 4); DiGiorno Supreme Pizza & Honey BBQ Boneless Wyngz (RJN, Ex. 6); DiGiorno Pepperoni Pizza & Buffalo Style Boneless Wyngz (RJN, Ex. 7); DiGiorno Pepperoni Pizza & Chocolate Chip Cookie Dough (RJN, Ex. 8); DiGiorno Classic Thin Crust Pepperoni Pizza (RJN, Ex. 9); California Pizza Kitchen Crispy Thin Crust Pizza Signature Pepperoni (RJN, Ex. 11); California Pizza Kitchen Crispy Thin Crust Personal Pizza BBQ Chicken (RJN, Ex. 12); California Pizza Kitchen Crispy Thin Crust Personal Pizza Hawaiian (RJN, Ex. 13); California Pizza Kitchen Crispy Thin Crust Personal Pizza Sicilian Recipe (RJN, Ex. 16); Stouffer's French Bread Pizza Three Meat (RJN, Ex. 18); Stouffer's French Bread Pizza Pepperoni (RJN, Ex. 19); Stouffer's French Bread Pizza Sausage and Pepperoni (RJN, Ex. 20); Stouffer's French Bread Pizza Deluxe (RJN, Ex. 21); Stouffer's French Bread Pizza Sausage (*see* attached, Ex. M (Giali Decl.)); *see also* 04/12/13 Request for Judicial Notice (Dkt. #20-2).

*Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1990). Where a plaintiff's claim under the predicate law fails (here, statutory public nuisance), so must plaintiff's UCL claim under the unlawful prong. *See, e.g., Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2011). (Dkt. #11-1 at 20; *see also* Dkt. #20-1 at 19-20.)[19]

The "unfair" prong also fails. Under the UCL there is a "safe harbor" for alleged violations that are permitted by other laws. As the court noted in *Cel-Tech*:

> Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

20 Cal. 4th 163, 182 (1999); *see also McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1387 (2005). (Dkt. #11-1 at 20-21; *see also* Dkt. #20-1 at 20-21.) Here, the USDA and FDA have expressly regulated and allowed the use of TFAs, therefore Nestlé's and CPK's use of TFAs cannot violate the UCL, under any prong. Accordingly, all of Weston's UCL claims fail.

### 4. The Breach of Implied Warranty Claim Is Frivolous

Weston's amended complaint adds a new cause of action, for "breach of the implied warranty of merchantability." (Amended Complaint ¶¶ 98-102.) Weston alleges that the Challenged Pizzas are unfit for their ordinary purpose – eating – because they contain TFAs (a lawful ingredient (*see* supra at 14-16)). This is frivolous. (*See* Dkt. #20-1 at 21-22.)

Preliminarily, defendants followed all applicable USDA and FDA regulations. (*See supra* 14-16.) Any additional restriction, as Weston's warranty

---

[19] Weston's passing reference to Cal. Healthy & Safety Code §11545 (*see* Amended Complaint ¶97) in support of UCL unlawful prong claim, a new addition in the amended complaint, does not save this frivolous claim. (*See* Dkt. #20-1 at 20:14-15 (product cannot be adulterated when the additive is GRAS).)

claim would impose, is preempted for the reasons previously pointed out.[20]   (*See supra* 10-12.)

Also, and fundamentally, the Challenged Pizzas do all that is required to comply with any warranty of merchantability that could apply.  The Challenged Pizzas (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (citing CAL. CIV. CODE § 1791.1).

The amended complaint contains no creditable allegation that consuming the Challenged Pizzas caused Simpson any ill effects, even though Simpson claims to have "repeatedly" bought and consumed the Challenged Pizzas.  (Amended Complaint ¶ 4.)  *See Birdsong*, 590 F.3d at 959 (no breach of implied warranty claim where headphones could have, but did not, cause injury and plaintiff asserted minor modifications would have made them safer); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 27-28 (D.D.C. 2007) (dismissing implied warranty claim for TFA-containing food because plaintiff did not allege that food was "in any way unpalatable or that [plaintiff] suffered any immediate ill effects").

Finally, to state a claim of breach of the implied warranty of merchantability a plaintiff must demonstrate that the offensive "substance" is not one "a consumer would reasonably expect to find . . . in the particular type of" food.  *Hoyte*, 489 F. Supp. 2d at 27-28; *see also Mexicali Rose v. Superior Court*, 1 Cal. 4th 617, 640-41 (Cal. 1992) (California, like the majority of courts, analyzes the reasonable expectation of the consumer as to the content of food).  Here, the presence of TFAs

---

[20] *See Espinosa v. Philip Morris USA, Inc.*, 500 F. Supp. 2d 979 (N.D. Ill. 2007) (federal law preempted breach of implied warranty of merchantability claims); *Mendes v. Medtronic, Inc.*, No. 93-106650H, 1993 WL 625526 (D. Mass. Aug. 2, 1993) (same); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271 (E.D.N.Y. 2009) (same); *Lashley v. Pfizer, Inc.*, 877 F. Supp. 2d 466 (S.D. Miss. 2012) (same).

are disclosed on the label twice (*see supra* at 15; 04/12/13 Request for Judicial Notice (Dkt. #20-2)) and therefore any reasonable consumer would expect TFAs in the Challenged Pizzas. *See, e.g., Johnson v. Mars, Inc.*, 2008 WL 2777063, at *2 (W.D. Wisc. July 14, 2008) (reasonable consumer would anticipate Snickers candy bar contains peanuts because peanuts are an ingredient on the label).

## C. A Large Sanction Is Appropriate

The severity of the sanctions should take into account whether a filing is only frivolous or both frivolous and made for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (1990). Where, as here, a complaint is found to have no legal basis, an improper purpose may be inferred. *Agbabiaka v. HSBC Bank USA Nat. Ass'n*, 2010 WL 1609974, *8 (N.D. Cal. 2010) (quoting *Paciulan v. George*, 38 F.Supp.2d 1128, 1144 (N.D. Cal. 1999)). As the Ninth Circuit has noted, "evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Townsend*, 929 F.2d at 1362.

Filing a complaint without proper factual and legal investigation is sanctionable. *See Christian*, 286 F.3d at 1127 ("The attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform *adequate legal research* that confirms whether the theoretical underpinnings of the complaint are 'warranted by existing law or a good faith argument for an extension, modification or reversal of existing law.'").

The inference of an improper purpose is further enhanced by the objective facts. Prior to filing the baseless lawsuit, Weston tried to use the threat of a nationwide consumer class action to extract a settlement. Then, once he filed the action, Weston immediately availed himself of numerous media outlets to publicize his suit – complete with "poison pizza" and "banned" statements to national and local media and over the internet, and using a website (http://www.poisonpizza.com ) that he had registered more than six weeks before he filed suit. When defendants' counsel asked Weston to cease his improper

statements to the media, Weston made clear that the only way that would happen was if there was a monetary settlement.

Filing a baseless complaint for media attention and publicity is an improper purpose sanctionable under Rule 11.[21] This is particularly so when the ultimate motivation is a corporate shake down to extort a settlement. *See Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (filing complaint was "clearly an attempt to intimidate the defendant into a large settlement" and an improper purpose in violation of Rule 11); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 524 (6th Cir. 2002) (finding plaintiff's "improper purpose was to file a lawsuit as a mechanism to force [defendant] to settle [a claim], rather than trying to prevail on the merits of that claim"); *Carlton v. Jolly*, 125 F.R.D. 423, 430 (D. Va. 1989) (extorting a settlement is an improper purpose under Rule 11).

"Rule 11 mandates sanctions when it is violated." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). The provisions of Rule 11 "expressly authorize[] the imposition of monetary and/or nonmonetary sanctions . . . A monetary sanction may be composed of either or both a penalty payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those 'fees and other expenses incurred as a direct result of the

---

[21] *See White v. General Motors Corp., Inc.*, 908 F.2d 675, 683 (10th Cir. 1990) (sanctions for improper purpose supported by plaintiff's threats against defendant to create unwanted publicity); *Bryant v. Brooklyn Barbeque Corp.*, 932 F.2d 697, 698, 609 (8th Cir. 1991) (complaint's lack of factual and legal allegations, combined with plaintiff's admission that it was filed to coincide with a defendant's criminal sentencing, supported district court's ruling that it was filed for the improper purposes of attracting attention and harassing the defendants); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 806 (5th Cir. 2003) (writ of execution was filed by plaintiff's attorney only for the improper purposes of embarrassing the defendant and promoting the attorney through the media). *Kunstler v. Britt*, 914 F.2d 505, 520 (4th Cir. 1990) (objectively baseless claims, combined with the timing of the filing, the publicity surrounding it, and its voluntary dismissal, led the court to determine that the complaint had no proper purpose, but was instead filed merely to gain media attention and leverage against defendants in the related case).

violation.'" *Truesdell v. S. California Permanente Med. Group*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (internal citations omitted).  The primary purpose of Rule 11 "is specific and general deterrence." *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287 (C.D. Cal. 1991) (internal citations omitted).  Thus, when a violation is found, the "sanction should be 'what is sufficient to deter repetition of such conduct or comparable conduct.'" *Truesdell*, 209 F.R.D. at 174 (internal citations omitted).

Courts have held that in cases "where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993); *accord Kunimoto v. Fidell*, 26 F. App'x 630, 631-32 (9th Cir. 2001).  Weston's scheme has cost defendants more than $150,000 in defense fees, separate from the fees associated with this motion.  (Giali Decl. ¶ 23.) This needless expense was caused by Weston's objectively baseless suit, and the Court should order that amount to be paid to the Court as a sanction against Mr. Weston and The Weston Firm.

In addition, defendants should be awarded their fees for preparing this motion.  *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."); *Margolis v. Ryan*, 140 F.3d 850, 855 (9th Cir. 1998) ("district court did not err by including in the amount [of sanctions awarded under Rule 11] the costs and fees borne by defendants-appellees in bringing the motion for sanctions").  Here, defendants' fees in bringing this motion have been in excess of $50,000 and defendants ask the Court to award that amount as a sanction payable to defendants.  (Giali Decl. ¶ 24.)

Weston's false statements and allegations concerning trans fat "bans" are a prime example of the cost to defendants of Weston's frivolous and improper conduct warranting sanctions.  Weston, an attorney, alleged in his initial complaint

and stated unequivocally to the media that trans fat is "banned in many parts of the world." (*See*, *supra*, p. 5.) Defendants then were forced to expend resources to determine that Weston's statements and allegations are false. Weston's latest amendment demonstrates that the original allegations and media statements were false. Hence, they should have never been made and certainly such irresponsible conduct should not be condoned. Weston should bear the consequences of the false statements he made. Ultimately, the fact that legislation limiting the quantity of trans fats exists in some places and forms – but does not apply to any of the products in question – goes a long way demonstrating the frivolous nature of the complaints in this action. The same scenario played out with respect to the Challenged Pizzas identified in the initial complaint. As defendants pointed out in their initial motion to dismiss and Rule 11 motion, four of the pizza products initially challenged ***never existed***. Weston has amended his complaint to omit those four products from the amended complaint.

Finally, Nestlé and CPK request that the Court sanction Weston by striking the amended complaint with prejudice. Given Weston's egregious conduct, these sanctions are modest.[22]

---

[22] *Compare, Pan-Pac. & Low Ball Cable Television Co. v. Pac. Union Co.*, 987 F.2d 594, 597 (9th Cir. 1993) (where failed to make reasonable factual and legal inquiry into bases of state law claims, claims were frivolous and court awarded $101,605.13 plus accumulated interest for attorney's fees); *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. at 287 (where plaintiff failed to make the minimum required factual inquiry before filing its complaint, the court held that the appropriate sanction was all of the expenses including attorney's fees of all defendants from the time of filing through the claims for sanctions; court awarded $1,446,511.49); *Kunimoto v. Fidell*, 26 F. App'x 630, 631-32 (9th Cir. 2001) (where court found plaintiffs lacked standing to file the complaint, the court noted that where the original complaint is improper, all attorney's fees reasonably incurred defending against it form the proper basis for sanctions; the court noted that the award was large, but concluded it was justified considering the special master's detailed findings); *ADO Fin., AG v. McDonnell Douglas Corp.*, 938 F. Supp. 590, 593 (C.D. Cal. 1996) (where court found party and law firm had made material representations and half-truths to court, it awarded reasonable fees to opposing counsel for fees associated primarily with opposing appropriate motions, totaling $138,970.55 (law firm responsible for 25%, party responsible for 75%), as well as assessing a $10,000 sanction to the court).

IV. **CONCLUSION**

For the foregoing reasons, defendants request the Court grant this motion, order Mr. Weston and The Weston Firm to pay a $150,000 sanction to the Court, order Mr. Weston and The Weston Firm to pay $50,000 to defendants as a reasonable off-set of the fees incurred in bringing this motion, and strike the amended complaint with prejudice.

DATED: May 6, 2013

MAYER BROWN LLP
Carmine R. Zarlenga
Dale J. Giali
Andrew Z. Edelstein


By: /s/ Dale J. Giali
Dale J. Giali
Attorneys for Defendants CALIFORNIA PIZZA KITCHEN, INC. and NESTLE USA, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2013, I caused the foregoing **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AND RELATED PAPERS** to be <u>**re-served**</u> on plaintiff's counsel. As the separate proof of service submitted with these papers attests, the memorandum of points and authorities and declaration of Dale Giali, with exhibits, were initially hand-served on Gregory Weston and The Weston Firm on April 11, 2013.

DATED: May 6, 2013                     MAYER BROWN LLP


By: /s/ Dale J. Giali
        Dale J. Giali
Attorneys for CALIFORNIA PIZZA
KITCHEN, INC. and NESTLE USA,
INC.