# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE SIMPSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA PIZZA KITCHEN, INC. and NESTLÉ USA, INC.,<br><br>Defendants. | CASE NO. 13-cv-164 JLS (JMA)<br><br>**ORDER GRANTING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>(ECF No. 20) |

Presently before the Court is Defendants California Pizza Kitchen, Inc. and Nestlé USA, Inc.'s ("Defendants") motion to dismiss Plaintiff's amended complaint (Mot. to Dismiss ("MTD"), ECF No. 20.) Also before the Court are Plaintiff Katie Simpson's ("Plaintiff") response in opposition to Defendants' MTD (Resp. in Opp'n to MTD, ECF No. 26) and Defendants' reply in support of their MTD (Reply in Supp. of ("ISO") MTD, ECF No. 29). The hearing set for June 6, 2013 was vacated and the matter taken under submission without oral argument pursuant to Civil Local Rule 7.1.d.1. Having considered the parties' arguments and the law, the Court **GRANTS** Defendants' motion and **DISMISSES** the FAC **WITHOUT PREJUDICE**.

## BACKGROUND

On January 21, 2013, Plaintiff filed a class action against Defendants, alleging claims of public nuisance and unfair and unlawful business practices premised upon

Defendants' use of artificial trans fatty acids ("TFAs")—specifically, partially hydrogenated vegetable oil ("PHVO")—in certain of their frozen pizza products ("Contested Pizzas") when safer alternatives are available. (Compl. at ¶ 3, ECF No. 1.) PHVO "is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400 degrees Fahrenheit in the presence of ion donor catalyst metals such as rhodium, ruthenium, and nickel." (First Am. Compl. ("FAC") at ¶ 12, ECF No. 13.) Plaintiff alleges that there is "'no safe level' of artificial trans fat intake" (*Id.* at ¶ 3), and that consumption of TFAs increases the likelihood of developing certain illnesses and health risks, including cardiovascular disease (*Id.* at ¶¶ 30-40); type-2 diabetes (*Id.* at ¶¶ 41-45); breast, prostate, and colorectal cancer (*Id.* at ¶¶ 46-51); Alzheimer's Disease (*Id.* at ¶¶ 52-56); and damage to the vital organs (*Id.* at ¶ 57).

Defendants moved to dismiss the complaint. (First MTD, ECF No. 11). On March 26, 2013, Plaintiff amended her complaint to assert the additional claim of breach of the implied warranty of merchantability. (FAC, ECF No. 13.) On April 12, 2013, Defendants filed the present motion.

## STANDARD OF REVIEW

### I. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing he has standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter

jurisdiction.").

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, Defendants' challenge is facial because it disputes whether Plaintiff has alleged harm sufficiently particularized to confer Article III standing. To adjudicate this facial challenge, the Court will assume the truth of Plaintiff's factual allegations, and draw all reasonable inferences in favor of Plaintiff. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Safe Air for Everyone*, 373 F.3d at 1039.

## II. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

(quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* at 678-79. This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

**ANALYSIS**

**I.  Motion to Dismiss**

Defendants move to dismiss on the grounds that Plaintiff lacks Article III standing (MTD 22-24, ECF No. 20), that Plaintiff cannot sue for products that she never purchased (*Id.* at 24-25), that Plaintiff's claims are preempted by federal law (*Id.* at 5-15), that the primary jurisdiction doctrine applies (*Id.* at 15-17), and that Plaintiff fails to allege sufficient facts to support her claims (*Id.* at 17-22). The Court addresses each argument in turn.

*A. Article III Standing*

It is axiomatic that under Article III of the United States Constitution, a federal court may only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real consequences for the parties. *Raines v. Byrd*, 521 U.S. 881,

818 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). One of the baseline requirements for justiciability in federal court is that the plaintiff have standing to assert the claims brought. *Id.; see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("Article III standing enforces the Constitution's case-or-controversy requirement") (citations omitted). As the sole proposed class representative,[1] Plaintiff has the burden of showing that Article III standing exists here. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

The essence of the standing inquiry is to determine whether the party seeking to invoke the Court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Three elements form the core, essential, or unchanging part of the standing requirement, derived directly from Article III and famously articulated as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotation marks, citations, and footnote omitted). This irreducible constitutional minimum, often termed "Article III standing," seeks to limit the reach of the judiciary into matters properly reserved for other branches of government and to maintain the critical balance of power at the heart of the tripartite government established by the Constitution. *See DaimlerChrysler*, 547 U.S. at 341; *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). Although the Supreme Court has noted that "the concept of 'Art. III standing' has not been defined with complete consistency," *Valley*

---

[1] In a class action, only one named plaintiff must meet the requirements of Article III standing. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

*Forge*, 454 U.S. at 475, these three "bedrock" requirements of injury, causation, and redressability are uniformly essential to federal court jurisdiction. *Raines*, 521 U.S. at 818-20; *see also Bennett v. Spear*, 520 U.S. 154, 164-66 (1997).

Here, Defendants object to Plaintiff's standing on the basis of the injury prong. "Among cases involving allegations of contaminated foods and pharmaceuticals, plaintiffs typically rely on two types of injuries to confer standing: (1) the increased risk of harm from exposure to a dangerous substance, and (2) the financial loss from purchasing a product in reliance on false or misleading information." *Arroyo v. Chattem, Inc.*, No. V 12-2129 CRB, 2012 WL 5412295, at *3 (N.D. Cal. Nov. 6, 2012).

First, to establish increased risk of harm, Plaintiff must show that there is both "(i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account." *Herrington v. Johnson & Johnson Consumer Cos.*, No. 09-CV-3317 (DMC), 2010 WL 421091, at *3 (D.N.J. Feb. 1, 2010) (citing *Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007)). Plaintiff alleges in her FAC that she bought the Contested Pizzas "approximately five times in the past year." (FAC ¶ 59, ECF No. 13.) While Plaintiff does present significant evidence of the harmful effects of prolonged consumption of TFAs, she does not allege facts tending to show that such isolated instances of TFA consumption are sufficient to cause the enumerated harmful effects. Thus, based on the allegations in the FAC, this Court is not convinced that consuming TFAs five times over the period of a year represents a substantial increased risk of harm, much less that the probability of that harm is substantial.

Second, an economic injury typically requires a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of usefulness. *Herrington*, 2010 WL 421091 at * 4. Plaintiff alleges that she paid for, and therefore lost money due to her purchase of, the Contested Pizzas. (FAC ¶ 73, ECF No. 13.) She also, however, consumed the pizzas. (*Id.* ¶ 95.) Consumption is the purpose for which one purchases frozen foods. Thus, Plaintiff received the benefit of her bargain from the

purchase of the Contested Pizzas. Moreover, Plaintiff's purchases were not made on the basis of false or misleading information, as the fact that the Contested Pizzas contained TFAs was explicitly divulged in the nutrition facts panel on each box. (MTD Exs. 1-25, ECF No. 20.) Therefore, having not alleged any advertising or wording on the product that may have misled Plaintiff into believing that the Contested Pizzas were free of TFAs, Plaintiff has not alleged an injury premised on economic loss due to misleading information.

Accordingly, Defendant's motion to dismiss for lack of standing is **GRANTED**.[2] Even though the Court dismisses Plaintiff's FAC for lack of standing, in order to provide guidance for any amended pleadings, it evaluates whether Plaintiff has sufficiently pleaded her claims.

***B. Federal Preemption***

Under the Supremacy Clause of the U.S. Constitution, any conflict between federal and state law is to be resolved in favor of federal law. U.S. CONST. art VI, cl. 2 (stating that "the Laws of the United States . . . shall be the supreme Law of the Land"). Preemption can be either express or implied. A state law is expressly preempted if Congress states such an intent in express terms. *Hillsborough Cnty. v. Automated Med. Labs., Inc*, 471 U.S. 707, 713 (1985). A state law is impliedly preempted either if Congress legislates in a particular field so extensively that it leaves no room for concurrent state regulation or if Congress expresses a sufficiently dominant

---

[2]At this stage in the litigation, the Court agrees with Plaintiff that she has standing to sue for products she never purchased because she is asserting her claims on behalf of a purported nationwide class and the products in question—frozen pizzas—are sufficiently similar to the products Plaintiff purchased. *See Astiana v. Dreyer's Grand Ice Cream, Inc*. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (stating that "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased," and finding relevant such factors as whether the products are of the same kind and whether the products contain many of the same ingredients); *see also Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (finding twenty varieties of nutrition bars sufficiently similar); *cf. Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (finding white chocolate baking chips, confectionary baking wafers, ground white chocolate flavor, mocha mix, and frappe mix not sufficiently similar).

federal interest. *Id.* (citations omitted). Even if Congress does not expressly or impliedly preempt state law in a given area, "state law is nullified to the extent that it actually conflicts with federal law"—for instance, as a result of the impossibility of satisfying both laws, or because the state law impedes known congressional purposes and objectives. *Id.* (citations omitted).

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 564 (2009) (citation omitted) (internal quotation marks omitted). Furthermore, there is a presumption that "field[s] which the States have traditionally occupied" are not preempted unless such is Congress's clear purpose. *Id.* (citation omitted) (internal quotation marks omitted).

The FDA's mission is to "promote the public health by promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner," and to "protect the public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(1), (2)(A). In the interest of promulgating nationally uniform labeling, the FDA claims the sole power to establish various food labeling requirements. *See* 21 U.S.C. § 343-1.

Plaintiff's claims are not concerned with labeling, however, but rather the healthfulness of TFAs and whether they should be permitted in frozen foods. The very fact that California and other states and cities have passed laws banning or severely restricting the use of TFAs in restaurants and other establishments located within their borders[3] proves that the FDA does not possess the exclusive authority to regulate foodstuffs and suggests that states could therefore plausibly regulate the TFA content of frozen foods.[4] Accordingly, the Court **DENIES** Defendants' motion to dismiss on

---

[3]*See, e.g.*, Cal. Health & Safety Code § 114377; New York City Health Code § 81.08; Philadelphia Health Code § 6-307.

[4]Then again, whether such regulation would constitute a violation of the dormant Commerce Clause is another matter entirely. *See, e.g.*, *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 805-06 (1976).

preemption grounds.**5**

## C. Public Nuisance under California Civil Code §§ 3479-93

A public nuisance is "[a]nything which is injurious to health, or is indecent, or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons." Cal. Penal Code § 370. In order to state a cause of action for public nuisance under Cal. Civ. Code § 3493,

> a plaintiff must allege that a defendant created (or had active involvement in creating) a condition that was harmful to health or interfered with the comfortable enjoyment of life or property; that the condition affected a substantial number of people at the same time; that an ordinary person would be reasonably annoyed or disturbed by the condition; that the seriousness of the harm outweighs the social utility of the defendants' conduct; that the plaintiff did not consent to the conduct; that the plaintiff suffered harm that was different from the type of harm suffered by the general public; and that the defendant's conduct was a substantial factor in causing the plaintiff's harm.

*Gregory Vill. Partners, L.P . v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 901 (N.D. Cal. 2011) (citation omitted).

The "different" harm plaintiff must allege in order to demonstrate standing to bring an action sounding in public nuisance requires that he "show special injury to himself of a character different **in kind—not merely in degree**—from that suffered by the general public." *Institoris v. City of Los Angeles*, 210 Cal. App. 3d 10, 20 (1989) (emphasis added). This requirement of a different harm stems from the belief that, because a public nuisance action concerns a wrong against the community, it is "ordinarily properly left to the appointed representative of the community." *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 123 (1971) (citations omitted).

Plaintiff alleges that she "suffered specific physical and emotional harm from Defendants' conduct when she consumed Defendants' Trans Fat Pizzas." (FAC ¶ 95,

---

⁵Because the Court finds that Plaintiff's claims are not preempted by federal law, the Court finds Defendants' argument based on the primary jurisdiction doctrine inapposite. Whether Plaintiff's claims present issues better suited to determination by a state legislature or agency rather than the courts, however, is a different question altogether.

1 ECF No. 13.) Plaintiff states that she suffered physical injury, because "consuming artificial trans fat in any quantity" causes bodily harm. (*Id.* ¶ 70.) She also claims that she lost money as a result of buying the Contested Pizzas. (*Id.* ¶ 73.) Plaintiff alleges that her "emotional harm" is ongoing due to the knowledge that "she injured her children" by feeding them the Contested Pizzas. (*Id.* ¶ 95.)

These allegations fail to establish, however, that Plaintiff suffered a different kind of harm than other consumers of the Contested Pizzas. TFAs are not uniquely harmful to Plaintiff, but rather constitute a general health hazard to anyone who consumes them. All consumers who have purchased the Contested Pizzas have "lost money" by that act in the same manner that Plaintiff did. And doubtless many other parents have fed their children the Contested Pizzas (and likely would feel upset to know about the health consequences detailed in the FAC). Because Plaintiff has failed to allege sufficient facts to demonstrate a special injury, she lacks standing to bring her public nuisance claim. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's public nuisance claim.[6]

### *D. California Unfair Competition Law*

Under California's unfair competition law ("UCL"), "unfair competition shall mean and include any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200.

*(i) Claims Under the "Unlawful" Prong*

(a) Public Nuisance

Plaintiff alleges that Defendants' TFA usage in the Contested Pizzas is a public nuisance under Cal. Civ. Code §§ 3479-93 and thus is unlawful conduct under the UCL. The Court has found that Defendants' TFA usage in the Contested Pizzas is not a public nuisance, however, and therefore it cannot be a violation of Cal. Civ. Code §§ 3479-93.

---

[6]Although this claim is dismissed without prejudice, this Court expresses some doubt as to the compatibility of a public nuisance claim with the class action vehicle, as by definition a class representative who suffers harm different in kind than other class members would also not have claims typical of the class's claims.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss this claim.

(b) Violation of Cal. Health & Safety Code § 110545

Plaintiff also alleges that Defendants' usage of TFAs violates California's Health and Safety Code and therefore constitutes unlawful conduct under the UCL. Cal. Health & Safety Code § 110555 states that "[a]ny food is adulterated if it is, bears, or contains any food additive that is unsafe within the meaning of Section 110445." Cal. Health & Safety Code § 110545 states that "[a]ny food is adulterated if it bears or contains any poisonous or deleterious substance that may render it injurious to health of man or any other animal that may consume it."

Plaintiff characterizes PHVO as a food additive and provides pages of information on the health risks associated with TFA consumption in the hopes of classifying TFAs as "poisonous or deleterious" (and, therefore, the Contested Pizzas as unlawfully adulterated). (FAC ¶¶ 3, 17-57, ECF No. 13.) TFAs are "generally regarded as safe" ("GRAS"),[7] however. By definition, something that is "generally regarded as safe" cannot at the same time be "not safe for human consumption." Moreover, GRAS substances are exempt from food additive status for the purpose of a food adulteration claim. *See* 21 U.S.C. § 321(s)(4); *see also* Cal. Health & Safety Code § 109940. Thus, the addition of TFAs to the Contested Pizzas does not constitute adulteration of food.

Furthermore, if merely being unhealthy were synonymous with "adulterated," the sale of a wide variety of food items currently available for consumption would be considered unlawful. (*See* Reply ISO MTD App. A, ECF No. 29.) This Court declines to make such a sweeping determination. Accordingly, Defendants have not violated the

---

[7]GRAS status is acheived either through an FDA approval process based on scientific procedures or through "[g]eneral recognition of safety through experience based on common use in food prior to January 1, 1958." 21 C.F.R. § 170.30 (1997). PHVO was invented in 1901 (FAC ¶ 13, ECF No. 13), and TFAs were commonly used in food prior to 1958. (MTD 7, ECF No. 20.) That the FDA has regulated the labeling requirements of TFAs under 21 C.F.R. § 101.4(b)(14), rather than banning their use, while also allowing certain TFAs that were voluntarily submitted to the FDA approval process to be listed explicitly as GRAS, provides further corroboration of TFAs' GRAS status. (*Id.* at 10-11.)

1 California Health and Safety Code, and the Court **GRANTS** Defendants' motion to
2 dismiss this claim.

*(ii) "Unfair" Prong*

Under the UCL, "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006) (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)).

Plaintiff alleges that injury from purchasing and consuming the Contested Pizzas could not have easily been avoided. (FAC ¶ 69, ECF No. 13.) The nutrition facts panels of all of the Contested Pizzas clearly indicate their TFA content, however. (MTD Exs. 1-25, ECF No. 20.) Moreover, Plaintiff follows this allegation with a list of 18 alternative pizza brands and 165 alternative pizza products that do not contain TFAs. (*Id.* at 14-15, App. B.) She could have avoided her injury by purchasing one of these TFA-free products instead. Accordingly, the Court finds that Plaintiff's injury from purchasing and consuming the Contested Pizzas could reasonably have been avoided, and therefore this Court **GRANTS** Defendants' motion to dismiss this claim.

*E. Breach of the Implied Warranty of Merchantability*

Under Cal. Com. Code § 2314, "[u]nless excluded or modified ([under] Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Under Cal. Com. Code § 2316, however, "[w]hen a buyer before entering into the contract has examined the goods or the sample model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."

Plaintiff alleges that Defendants, as merchants of food products, breached the implied warranty of merchantability, because the Contested Pizzas are "not safe for human consumption," their ordinary purpose. (FAC ¶¶ 99-100, ECF No. 13.) Yet the

Contested Pizzas are clearly labeled as including TFAs per FDA labeling requirements. (MTD Exs. 1-25, ECF No. 20.) Therefore, Plaintiff had a sufficient opportunity to examine the Contested Pizzas prior to purchase. Plaintiff, however, has not alleged any justifications for her failure to inspect the Contested Pizzas before purchasing and consuming them. Accordingly, Plaintiff has waived her rights under the implied warranty, and Defendants' motion to dismiss this claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Plaintiff's first amended complaint is **DISMISSED WITHOUT PREJUDICE**. If Plaintiff wishes, she **SHALL FILE** an amended complaint within <u>fourteen days</u> of the date this Order is electronically docketed. Failure to file an amended complaint by this date may result in dismissal of this case with prejudice.

**IT IS SO ORDERED**.

DATED: October 1, 2013

Honorable Janis L. Sammartino
United States District Judge